UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DOUBLE G RANCH, LLC, | ) Case No. 10-53029 |
| | ) |
| Debtor. | ) |
| | ) Judge Steven W. Rhodes |
| | ) |

## COMBINED PLAN OF LIQUIDATION
## AND DISCLOSURE STATEMENT OF THE DEBTOR

### DATED: JULY 16, 2010

**BROOKS WILKINS SHARKEY & TURCO**
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
401 South Old Woodward Avenue, Suite 460
Birmingham, Michigan 48009
(248) 971-1800


Counsel for the Debtor

I.   **PLAN OF LIQUIDATION OF DOUBLE G RANCH, LLC (the "Debtor") UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE**

## INTRODUCTION

This is a combined Plan of Liquidation and Disclosure Statement. The Plan provides for the transfer of all assets and claims of the Debtor to a Liquidation Trustee to be selected by the Official Committee of Unsecured Creditors. The Disclosure Statement, which begins on page 23 of this document, is intended to provide creditors with information about the Debtor that will assist them in making a decision on whether or not to vote to confirm the Plan.

The Plan has been developed in consultation with the Official Committee of Unsecured Creditors appointed in this case (the "Committee"). The Committee supports the Plan.

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Liquidation Plan (as defined below), shall have the meanings set forth below:

**1.0   Definitions**

**1.01   "Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Article 3 of the Liquidation Plan.

**1.02   "Administrative Expense Claim" or "Administrative Claim"** means any right to payment constituting a cost or expense of administration of the Case under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtor's business; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) compensation Claims by Professionals; and (d) any fees or charges assessed against and payable by the Debtor under Section 1930 of title 28 of the United States Code.

**1.03   "Allowed"** means with reference to any Claim: any Claim (a) proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtor or the Liquidation Trustee have not Filed an objection on or before the expiration of the time period set forth for the objection to such Claim in the Liquidation Plan, the Bankruptcy Code, the Bankruptcy Rules, or an Order of the Bankruptcy Court fixing an objection date, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim holder; (b) listed on the Schedules, as amended, as other than disputed, contingent or unliquidated; (c) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Liquidation Plan shall not be considered Allowed Claims hereunder); (d) expressly allowed under or pursuant to the terms of the Liquidation Plan; or (e) on behalf of such Claim no consideration has or will be received, in whole or in part, by the Claim holder from any other source on account of such Claim.

**1.04   "Assets"** means <u>all</u> assets and property of the Estate of the Debtor, regardless of whether reflected in the financial records of the Debtor, including but not limited to: equipment, cash, deposits, refunds, rebates, abatements, fixtures, real property interests, contractual interests, intangibles, Claims,

Causes of Action, Estate Litigation, suits, setoffs, recoupments, equitable or legal rights, interests and remedies.

**1.05** **"Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Petition Date.

**1.06** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code and (b) the local rules of the Court, in each case, as in effect on the Petition Date.

**1.07** **"Beneficiaries"** means holders of: (i) Allowed Claims that are entitled to receive Distributions under the Liquidation Plan and/or Liquidation Trust; and (ii) Allowed Administrative Expense Claims.

**1.08** **"Business Day"** means any day other than: (a) a Saturday; (b) a Sunday and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.09** **"Case"** means the bankruptcy case of the Debtor, being Bankruptcy Case No. 10-53029 in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division - Detroit.

**1.10** **"Cash"** means legal tender of the United States of America.

**1.11** **"Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to, all rights and causes of action permitted under chapter 5 of the Bankruptcy Code, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Case, including through the Effective Date, that belong to the Debtor.

**1.12** **"Claim"** means any claim against the Debtor, regardless of whether asserted and regardless of whether known, as the term "claim" is defined in Section 101(5) of the Bankruptcy Code, and shall include, but is not limited to: Administrative Expense Claims; Disputed Claims; any claims arising from or related to any Equity Interests and Claims; General Unsecured Claims; Priority Claims; and Secured Claims.

**1.13** **"Class"** means each of the groups of holders of Claims or Equity Interests described in Article 5 of the Liquidation Plan.

**1.14** **"Collateral"** means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim up to the Allowed amount of such Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law, and excluding the Causes of Action.

**1.15** **"Committee"** means the Official Committee of Unsecured Creditors appointed in the Debtor's Case, as may be amended from time to time.

**1.16** **"Confirmation Date"** means the date on which the Confirmation Order becomes a Final Order.

**1.17** **"Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Liquidation Plan, as it may be adjourned or continued from time to time.

**1.18** **"Confirmation Order"** means an order of the Court confirming the Liquidation Plan under Section 1129 of the Bankruptcy Code that has become a Final Order.

**1.19** **"Court"** means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division - Detroit.

**1.20** **"Current Officers"** and **"Current Directors"** means the officers and directors of the Debtor prior to the Effective date.

**1.21** **"Debtor"** means Double G Ranch, LLC.

**1.22** **"Disclosure Statement"** means the Disclosure Statement filed pursuant to Section 1125 of the Bankruptcy Code with respect to the Liquidation Plan of the Debtor under Chapter 11 of the Bankruptcy Code, including all exhibits, appendices, and schedules thereto, if any, as same may be amended, modified, or supplemented from time to time.

**1.23** **"Disclosure Statement Approval Order"** means a Final Order granting approval the Disclosure Statement.

**1.24** **"Disputed Claim"** means a Claim or any portion thereof: (a) listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtor, or the Liquidation Trustee, has Filed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) for which the amount or classification of the Claim specified in the relevant proof of claim exceeds the amount or classification of any corresponding Claim listed in the Schedules by the Debtor; (d) for which no corresponding Claim has been listed in the Schedules by the Debtor; (e) on behalf of which Claim the Claim holder has received consideration, in whole or in part, from another source on account of such Claim; (f) that is not an Allowed Claim; or (g) that is otherwise disputed by the Debtor or the Liquidation Trustee in accordance with applicable law, and in regards to which such dispute has not been withdrawn or determined by a Final Order.

**1.25** **"Disputed Reserve"** means the amount of Cash that would have been distributed on the Distribution Date, or in subsequent Distributions, to the holders of Disputed Claims if such Disputed Claims had in fact been Allowed on such date: (a) for liquidated Claims, in the amount asserted in a filed Proof of Claim or Administrative Claim; and (b) for unliquidated Claims, the amount estimated by the Liquidation Trustee as the maximum reasonable amount that could ultimately be allowed by the Court.

**1.26** **"Distribution"** means a distribution of Cash or other property of the Estate made in accordance with the Liquidation Plan or the Liquidation Trust.

**1.27** **"Distribution Date"** means the date on which the Liquidation Trustee shall make the Distribution, which shall be a date selected by the Liquidation Trustee.

**1.28** **"Effective Date"** means the first business day after which the Confirmation Order becomes a Final Order.

**1.29** **"Entity"** or **"Entities"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

**1.30** **"Equity Interests"** means: (a) any ownership interest in the Debtor; (b) any option, warrant, or right to purchase, sell, or subscribe for an ownership interest in, or other equity security of, the

Debtor; (c) any and all redemption, conversion, exchange, voting, participation, or dividend rights or liquidation preferences relating to any of the foregoing, as they exist prior to the Effective Date.

**1.31** **"Estate"** means the estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of the Case, and all Assets that comprise the Estate.

**1.32** **"Estate Litigation"** means all proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estate, Liquidation Trust, Reorganized Debtor, the Committee or by any party on behalf of or for the benefit of the Estate or Liquidation Trust, including, but not limited to, to recover preferences, fraudulent conveyances or avoidance actions, or any other claim of or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code.

**1.33** **"File" or "Filed"** means, with respect to any pleading, entered on the docket of the Case and properly served in accordance with the Bankruptcy Rules.

**1.34** **"Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, reconsideration, or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, reconsideration, or rehearing has been Filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has been denied or mandamus, reargument, reconsideration, or rehearing has been denied or resulted in no modification thereof, and the time to take any further appeal, petition for certiorari, or move for mandamus, reargument, reconsideration, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be Filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.35** **"General Unsecured Claim"** means an Allowed unsecured Claim that is not a Priority Claim, including Allowed rejection damage Claims asserted under the provisions of Article 9.2.

**1.36** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**1.37** **"Insiders"** shall have the meaning ascribed to it in Section 101(31) of the Bankruptcy Code.

**1.38** **"Liabilities"** means the all the liabilities of the Debtor's Estate, whether or not reflected in the financial records of the Debtor.

**1.39** **"Lien"** has the meaning ascribed to that term in Section 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided shall not constitute a Lien for the purposes of the Liquidation Plan.

**1.40** **"Liquidation Plan"** means this Liquidation Plan under chapter 11 of the Bankruptcy Code as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

**1.41** **"Liquidation Trust"** means that Liquidation Trust established pursuant to the Liquidation Plan in which the Liquidation Trust Assets shall vest as set forth in the Liquidation Plan on the Effective Date.

**1.42** "**Liquidation Trust Agreement**" means that agreement that governs the operation and management of the Liquidation Trust, in a form substantially similar to Addendum A.

**1.43** "**Liquidation Trustee**" means the person vested with the authority under the Liquidation Trust to administer the Liquidation Trust, as defined in Article 7 of this Liquidation Plan.

**1.44** "**Liquidation Trust Assets**" means all of the assets transferred or granted to the Liquidation Trust, consisting of: (i) the Causes of Action and Estate Litigation; (ii) the Liquidation Trust Proceeds; and (iii) all other Assets of the Estate.

**1.45** "**Liquidation Trust Proceeds**" means the proceeds from the collection, liquidation, sale or other disposition of the Debtor's Assets as of the Effective Date, including the proceeds received from any Causes of Action or Estate Litigation.

**1.46** "**Petition Date**" means April 20, 2010, the date on which the Debtor Filed its chapter 11 petition and commenced the Case.

**1.47** "**Priority Claim**" means any Allowed Claim of a kind specified in Sections 502(i) or 507(a)(4), (5), (7), or (8) of the Bankruptcy Code.

**1.48** "**Professional**" means any person or Entity employed by the Debtor or the Committee pursuant to a Final Order in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and who shall be compensated for services rendered prior to and after the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.49** "**Pro Rata**" means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed Claims in that Class.

**1.50** "**Record Date**" means the record date for determining the entitlement to receive Distributions under the Liquidation Plan on account of Allowed Claims.

**1.51** "**Released Parties**" or "**Released Party**" has the meaning ascribed thereto in Article 10.

**1.52** "**Reorganized Debtor**" means the Debtor on or after the Effective Date.

**1.53** "**Representatives**" means, without limitation, any existing or former affiliate, subsidiary, member, officer, director, partner, stockholder, trustee, member, representative, employee, agent, attorney, business advisor, financial advisor, accountant, other Professional, their successors or assigns, or any person who is or was in control of any of the foregoing.

**1.54** "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtor in the Case pursuant to Section 521 of the Bankruptcy Code on December 19, 2008, and as such schedules and statements have been or may be supplemented or amended from time to time.

**1.55** "**Secured Claim**" means an Allowed Claim that is secured by a Lien (which is valid, perfected and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to the setoff.

5

**1.56** **"Trust Advisory Board"** means the advisory board created for the Liquidation Trust and as further described in Section 6.4.

**1.57** **"Trust Expenses"** means expenses of the Liquidation Trust.

**1.58** **"Unclaimed Property"** means any Distributions that are returned to the Liquidation Trustee or Liquidation Trust as: (i) undeliverable to a Beneficiary, or (ii) unclaimed by a Beneficiary, as further described in section 8.5.1.

**1.59** **"Unimpaired"** means an Allowed Claim or Equity Interest that is not "Impaired" within the meaning of Section 1124 of the Bankruptcy Code.

**1.60** **"United States Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the Eastern District of Michigan, Southern Division.


## ARTICLE 2

## INTERPRETATION, APPLICATION OF DEFINITIONS, RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Liquidation Plan: (a) any reference in the Liquidation Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Liquidation Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Liquidation Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Liquidation Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Liquidation Plan as a whole and not to any particular article, section, subsection, or clause contained in the Liquidation Plan. A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Liquidation Plan.

The headings in the Liquidation Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Liquidation Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Liquidation Plan, the provisions of Bankruptcy Rule 9006(a) shall apply. If any payment or act under the Liquidation Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

# ARTICLE 3

## ADMINISTRATIVE EXPENSE CLAIMS

**3.1      Administrative Expense Claims**

Unless the holders of such claims shall have agreed to different payment terms, all Allowed Administrative Claims shall be paid in cash, in full, on the later of (i) the due date, (ii) thirty (30) days after entry of a Final Order of the Bankruptcy Court Allowing such Administrative Claim, or (iii) if the Administrative Claim is not disputed by the Debtor and is an Allowed Claim, the later of its due date or thirty (30) days after the Effective Date.

**3.2      Statutory Fees**

All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid (i) if due and owing, on or prior to the Effective Date by the Debtor, and (ii) if due and owing after the Effective Date, as and when due from the proceeds of the Liquidation Trust.

**3.3      Professional Compensation**

Professionals of the Estate shall have an Allowed Administrative Claim for all fees and expenses that have accrued, but are not due or remain unpaid, or that come due after the Effective Date. In the case of Administrative Claims of all Professionals, Professionals shall file final fee applications for services provided to or for the benefit of the Debtor and/or the Committee within thirty (30) days after the Effective Date. All Allowed Administrative Claims of Professionals shall be paid by the Debtor within ten (10) days of the entry of a Final Order approving the Administrative Claims of such Professionals.

To the extent any Professional's Allowed Administrative Claims are not paid in full by the Debtor or Reorganized Debtor, then such Professional's Allowed Administrative Claims shall be paid from the proceeds of the Liquidation Trust prior to the payment of any post-confirmation Trust Expenses, including Professional Fees of the Liquidation Trust and/or Liquidation Trustee.

**3.4      Administrative Claim Bar Date**

Any requests for the payment or allowance of an Administrative Claim (other than the Administrative Claims of Professionals, which are dealt with in Section 3.3, above shall be discharged and barred forever and shall not be enforceable unless such request for the payment of an Administrative Claim is Filed and served upon Debtor or Reorganized Debtor, as the case may be, and the Liquidation Trustee, on or before the date that is thirty (30) days after the Effective Date of the Liquidation Plan, or if the Court has previously entered an order in this bankruptcy Case granting a creditor an Administrative Claim, such creditor serves a copy of the order granting such Administrative Claim upon the Debtor or Reorganized Debtor, as the case may be, and the Liquidation Trustee, within such thirty (30) day period.

# ARTICLE 4

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Liquidation Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be

deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that such Claim is an Allowed Claim.

The classification of Claims and Equity Interests of the Debtors pursuant to the Liquidation Plan are as follows:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | Allowed Priority Claims | Impaired – entitled to vote |
| Class 2 | Allowed General Unsecured Claims | Impaired – entitled to vote |
| Class 3 | Equity Interests and Claims | Impaired – entitled to vote |

## ARTICLE 5

## TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS UNDER THE LIQUIDATION PLAN; ACCEPTANCE OR REJECTION OF THE LIQUIDATION PLAN

The following treatment set forth in this Article 5 shall be accorded to Allowed Claims against, and Equity Interests in, the Debtors.

### 5.1 Impaired Claims

#### 5.1.1 Class 1: Allowed Priority Claims

Class 1 consists of all Allowed Priority Claims. Unless the Debtor or the Reorganized Debtor, the Liquidation Trustee and the holder of such Allowed Priority Claim agree to a different treatment, and subject to the provisions of Article 6 of the Liquidation Plan, if applicable, each holder of an Allowed Priority Claim shall be paid, in full and in cash, from the proceeds of the Liquidation Trust by the Liquidation Trustee, after payment in full of all unpaid Allowed Administrative Claims. The Debtor, Reorganized Debtor and the Liquidation Trustee reserve the right to dispute any asserted Priority Claim pursuant to Articles 6 and 8 of the Liquidation Plan.

Class 1 is Impaired and is entitled to vote to accept or reject the Liquidation Plan.

#### 5.1.2 Class 2: Allowed General Unsecured Claims

Class 3 consists of the Allowed General Unsecured Claim(s) of the Debtor, including (to the extent they are Allowed Claims) (i) to the extent not paid in full by the Debtor prior to Confirmation, Claims arising from non-payment of Professionals' Allowed Administrative Claims, (ii) the deficiency Claims of the Class 1 Creditors, (iii) all holders of Claims arising from rejected executory contracts or unexpired leases, and (iv) all other general unsecured creditors. Unless the Liquidation Trustee and the holder of such Claim agree to a different treatment, and subject to the provisions of this Liquidation Plan, following resolution of (A) all Disputed Claims; (B) Causes of Action and Estate Litigation; and (C) other Estate Claims, each holder of an Allowed General Unsecured Claim shall receive a pro-rata share of the Liquidation Trust Proceeds after (x) payment of any remaining deficiency balance of Ch. 11 pre-confirmation Allowed Administrative Claims, and (y) payment of the costs of administration of the Liquidation Trust, including all attorneys fees and advisors fees.

Class 2 is Impaired and is entitled to vote to accept or reject the Liquidation Plan.

### 5.1.3    Class 3:  Equity Interests and Claims

Class 3 consists of all Equity Interests and Claims. The holders of the Equity Interests and Claims shall neither receive any distributions nor retain any property under the Liquidation Plan or Liquidation Trust; unless the holders of Allowed Claims in Classes 1, and 2 are paid in full, at which time the holders of Class 3 Equity Interests shall be entitled to receive the remaining proceeds or other assets of the Liquidation Trust.

Class 3 is Impaired, and is entitled to vote to accept or reject the Liquidation Plan.

# ARTICLE 6

# THE LIQUIDATION TRUST

## 6.1    Formation of the Liquidation Trust

On the Effective Date, the Liquidation Trust shall be established for the limited purpose of: (i) administering the Liquidation Trust Assets, (ii) analyzing, and if in the sole discretion of the Liquidation Trustee, prosecuting and/or liquidating Causes of Action, Estate Litigation and other Estate Claims, (iii) resolving all Disputed Claims as of the Effective Date, and (iv) making all Distributions provided for under the Liquidation Plan in respect of Class 3 and 4 Allowed Claims and all other Claims that may become Class 3 Allowed Claims subsequent to the Effective Date.   The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d).   The Liquidation Trust shall be governed under the laws of the State of Michigan

## 6.2    The Liquidation Trustee

The Liquidation Trustee shall be designated by the Committee. A party is not precluded from serving as the Liquidation Trustee merely as a consequence of having a prior relationship with the Debtor or by serving as a professional retained by the Debtor or the Committee in the Chapter 11 Case.  The person so designated shall become the Liquidation Trustee on the Effective Date. The Liquidation Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Liquidation Trust Agreement.  The Liquidation Trustee may be removed by the Court for cause shown or pursuant to the terms of the Liquidation Trust Agreement.

## 6.3    Funding of the Liquidation Trust

On the Effective Date, the Debtor shall be deemed to have transferred and conveyed all right, title, and interest in the Liquidation Trust Assets to the Liquidation Trust, and all Liquidation Trust Assets shall automatically and irrevocably vest in the Liquidation Trust without further action on the part of the Debtor, the Liquidation Trustee or the Court, with no reversionary interest in the Debtor except as otherwise provided in the Liquidation Plan.

The Liquidation Trust Assets shall include the following: (i) all of the Causes of Action and Estate Litigation; (ii) the Liquidation Trust Proceeds; and (iii) all other tangible or intangible remaining Assets of the Estate.

The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of all holders of Allowed Administrative Claims and 3 Allowed Class 1, 2 and 3 Claims entitled to

receive distributions from the Liquidation Trust under the Liquidation Plan. The assets comprising the Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtor to the members of Class 3 holding Allowed Claims entitled to receive distributions from the Liquidation Trust under the Liquidation Plan in exchange for their Allowed Claims, and then by the members of Class 3 holding Allowed Claims entitled to receive distributions from the Liquidation Trust under the Liquidation Plan to the Liquidation Trust in exchange for a beneficial interest in the Liquidation Trust. Such members of Class 3 holding Allowed Claims shall be treated as the grantors and owners of the Liquidation Trust. Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtor's rights, title, and interest in the Liquidation Trust Assets, and the Debtor will have no further interest in, or with respect to, the Liquidation Trust Assets.

Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtor and the Estate shall have no other or further rights or obligations with respect to the Liquidation Trust except as specifically set forth in the Liquidation Plan; provided, however, that the Debtor will make reasonable efforts to cooperate with the Liquidation Trustee in achieving and effectuating the intent and purpose of the Liquidation Trust.

**6.4    The Trust Advisory Board**

An advisory board (the "Trust Advisory Board") shall be created for the Liquidation Trust and shall be comprised of at least three (3) members, each of whom shall be designated by the Committee.

The Trust Advisory Board shall adopt such bylaws as it may deem appropriate. The Liquidation Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Liquidation Trust. In the event of the resignation or removal of the Liquidation Trustee, the Trust Advisory Board shall designate a person to serve as successor Liquidation Trustee.

The members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Liquidation Trust in accordance with the Liquidation Trust Agreement. Such reimbursement shall be payable solely from the Liquidation Trust.

Upon the certification by the Liquidation Trustee that the Liquidation Trust Assets have been liquidated, distributed, abandoned, or otherwise disposed of, the members of the Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

**6.5    Responsibilities of Liquidation Trustee**

The Liquidation Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Liquidation Plan and the Liquidation Trust and will have those responsibilities created by this Liquidation Plan and the Liquidation Trust upon the terms and conditions summarized therein, and will exercise the rights and powers vested in it by this Liquidation Plan and the Liquidation Trust in the same manner, and use the same degree of care and skill in their exercise as a prudent person would exercise and use under the circumstances in the conduct of its/his own affairs, and further agrees to receive and disburse all of the Liquidation Trust Assets in accordance with the terms thereof and this Liquidation Plan. More specifically, the Liquidation Trustee shall have the right, power, authority, standing and approval and shall be empowered to:

(a)   perform all of the obligations and agreements of the Liquidation Plan and the Liquidation Trust provided for herein;

(b)   keep and maintain in a trust account for the benefit of the Liquidation Trust into which proceeds resulting from the initial receipt or from the sale or other disposition of, or from the income

resulting from, all or any part of the liquidation of Debtors' Assets and/or the prosecution of Causes of Action or Estate Litigation;

(c) keep and maintain trust accounts for the benefit of the Liquidation Trust into which accounts the Trustee may place the Disputed Reserves;

(d) commence, continue, prosecute, litigate and/or settle and compromise Causes of Action and Estate Litigation on behalf of the Liquidation Trust and for the benefit of the Beneficiaries thereof;

(e) object to any Claims (disputed or otherwise), and to compromise or settle any Claims prior to, during or after objection and/or to seek Court approval for any settlements of Claims;

(f) make distributions in respect of Allowed Administrative and Class 1, 2 and 3 Claims and all other Claims that become Allowed Claims subsequent to the Effective Date in accordance with the Liquidation Plan;

(g) collect, receive and give receipt for all sums of money or other property due to the Debtor, its Estate or the Liquidation Trust, or take any other actions necessary to the collection, receipt or disposition of any Assets of the Estate;

(h) compromise or settle disputes with respect to disputes or debt obligations owed to the Debtor, the Estate or the Liquidation Trust;

(i) execute and deliver all releases, satisfactions and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

(j) retain and/or terminate professional persons, in its discretion, to assist in the duties and responsibilities ascribed to him under this Liquidation Plan and the Liquidation Trust. The reasonable fees and expenses of all professionals retained by the Liquidation Trustee shall be paid from the Liquidation Trust Proceeds obtained from the liquidation and/or prosecution of the Causes of Action and Estate Litigation. Professionals of the Liquidation Trustee may reserve in their client trust accounts amounts sufficient to pay such fees and expenses from the Liquidation Trust Proceeds;

(k) satisfy all reporting requirements for the Liquidation Trust, and all assets held by or on behalf of the Liquidation Trust, to the relevant reporting authority;

(l) file with the Bankruptcy Court, as necessary, semi-annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it, and other matters required to be included in such report; and

(m) except as otherwise ordered by the Court, and subject to the terms of the Liquidation Plan, pay any fees and expenses incurred by the Liquidation Trust on or after the Effective Date in accordance with the Liquidation Trust Agreement.

Subject to the other terms of the Liquidation Plan and the Liquidation Trust, the Liquidation Trustee shall also have the right, power, authority, standing and approval to commence, continue, prosecute, litigate and/or settle and compromise Causes of Action and any other Estate Litigation or Claim against third parties. The Liquidation Trustee shall also have the right, standing and approval to object to the allowance of any Claim.

The Liquidation Trustee may, in his sole discretion, and without order of the Court, allow the Reorganized Debtor or the Trust Advisory Board to commence, continue, prosecute, litigate and/or settle and compromise any Causes of Action and any other Estate Litigation or Claim against third parties on behalf of the Liquidation Trust and/or the Debtor and the Reorganized Debtor or the Trust Advisory Board shall have the right, power, authority, standing and approval to commence such Causes of Action and any other Estate Litigation or Claim upon the request of the Liquidation Trustee.

**6.6     Claims Against Liquidation Trust**

All persons having any claim against the Liquidation Trust or its Professionals (which for purposes of this Article 7, the term "Professionals" shall also include the Trust Advisory Board and the Professionals employed by the Trust Advisory Board) in connection with its performance of its rights, powers and duties as such shall only look to the Liquidation Trust and the Liquidating Trust Assets for payment or satisfaction thereof.

**6.7     Commingling of Assets and Liquidation Trust Proceeds**

The Liquidation Trustee shall not commingle any of the Debtor's Assets or the Liquidation Trust Assets with its own property or the property of any other person.

**6.8     Reliance on Others**

The Liquidation Trustee may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons, provided, however, that the Liquidation Trustee shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Liquidation Plan.

**6.9     Liability for Errors and Omissions**

The Liquidation Trust, Liquidation Trustee, the Trust Advisory Board and all Professionals, and agents of same, shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken by it, unless it shall be proved that they or their agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of their rights, powers or duties according to this Liquidation Plan and the Liquidation Trust. In the event gross negligence and willful misconduct is proven, the prevailing party shall be entitled to reimbursement of their reasonable costs, including attorney's fees. Neither the Liquidation Trustee nor the Trust Advisory Board make any representations as to: (i) the value or condition of the Assets of the Debtor or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Causes of Action or Estate Litigation (iii) the amount at which Liabilities may be settled, (iv) the amount of any Distributions to be made in accordance with this Liquidation Plan from the Liquidation Trust Assets and (v) the security afforded by this Liquidation Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Liquidation Plan, and the Liquidation Trustee, the Trust Advisory Board and all Professionals shall incur no liability or responsibility in respect of such matters.

**6.10     Indemnification**

The Liquidation Trustee, Trust Advisory Board, their Professionals and agents shall be indemnified by and receive reimbursement from the Liquidation Trust Assets (whether or not distributed to the Beneficiaries) against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of its powers and duties pursuant to this Liquidation Plan and

12

Liquidation Trust unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of the gross negligence or willful misconduct of the Liquidation Trustee, Trust Advisory Board, or their Professionals and agents. All claims of the Liquidation Trustee, Trust Advisory Board, their Professionals or agents for indemnification or reimbursement under this Article 7 shall be offset against any portion of the Assets of the Debtor including, but not limited to, the Liquidation Trust Proceeds or, at Liquidation Trustee's discretion, against any payment or distribution made or to be made in accordance with Articles 5 and 8 of this Liquidation Plan; provided, however, that payment of all outstanding Chapter 11 pre-confirmation Allowed Administrative Claims are paid in full.

**6.11    Tax Treatment of the Liquidation Trust**

The Liquidation Trustee may pay taxes from the Liquidation Trust Assets as appropriate. In addition, the Liquidation Trust shall require consistent valuation of the property contributed to the Liquidation Trust by the Liquidation Trustee and the Beneficiaries for all federal income tax purposes. The Liquidation Trust is intended to be treated for federal income tax purposes as a liquidating trust for the benefit of creditors or claimants within the meaning of Treasury Regulations section 301.7701-4(d) and in accordance with IRS Revenue Procedure 94-45, and, as a grantor trust under Section 677 of the Internal Revenue Code of 1986, as amended. Accordingly, the Liquidation Trust Assets shall be treated for all purposes of the Internal Revenue Code as (i) a transfer of such distribution to such creditors who are the Beneficiaries of the Liquidation Trust; and (ii) a transfer to the Liquidation Trust by the Beneficiaries, who will be treated as the grantors and deemed owners of the Liquidation Trust Assets. The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Liquidation Trust as a grantor trust pursuant to applicable Treasury Regulations, including Treasury Regulation Section 1.671-4(a), and any income of the Liquidation Trust will be treated as subject to tax on a current basis. Subject to the receipt of any definitive guidance of the IRS or the Bankruptcy Court, any claims reserve is intended to qualify and be treated as a disputed ownership fund pursuant to Proposed Treasury Regulation Section 1.468B-9. As such, any disputed claims reserve shall report and pay any taxes on its income, the Liquidation Trustee shall act as the "administrator" of the disputed ownership fund, and the disputed claims reserve shall be subject to the continuing jurisdiction of the Bankruptcy Court. Currently, no money or other property shall be distributed to any Person holding a disputed claim except to the extent that such disputed claim becomes an Allowed Claim pursuant to the Plan.

**6.12    Reports to be Filed by the Creditor Trust**

The Liquidation Trust may, but is not required to, file with the Court semi-annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it, and other matters required to be included in such report in accordance with the Liquidation Trust Agreement.

**6.13    Investment Authority**

The Liquidating Trustee shall have investment powers which are limited to those powers reasonably necessary to maintain the value of the Liquidating Trust assets and to further the liquidating purpose of the trust as further described in IRS Revenue Procedure 94-45. The Liquidating Trustee may only invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury Bills as specified in Revenue Procedure 94-45. Income earned on investments shall be deemed a part of the Liquidation Trust Assets.

13

**6.14    Exemption From Certain Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from the Debtor or the Liquidation Trust to any Entity pursuant to the Liquidation Plan in the United States shall not be taxed under any law imposing a stamp tax or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Liquidation Plan.

**6.15    Termination**

Termination of the Liquidation Trust shall occur no later than five (5) years after the Effective Date, unless the Bankruptcy Court shall approve an extension based upon a finding that such an extension is necessary for the Liquidation Trust to complete its purpose.

**6.16    Privileges**

To the full extent permitted by law, the Debtor shall irrevocably transfer to the Liquidation Trustee, as its legal successor, all rights of the Debtor and its Estate to exercise or waive any privilege, including the attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any document or communication (whether written or oral) (collectively, the "Privileges"), and the Debtor and the Liquidation Trustee are authorized to take all necessary actions to effectuate the transfer of the Privileges. All such Privileges also shall vest in the Liquidation Trust and its representatives, to the full extent permitted under law. This transfer is self-executing as of the Effective Date, provided however, that the Liquidation Trustee and the Debtor are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges. After the Effective Date, the Liquidation Trustee shall have the power and authority to assert or waive the Privileges.

**ARTICLE 7**
**MEANS FOR EXECUTION OF RESTRUCTURING PLAN**

**7.1    Liquidation of Debtor**

The Debtor shall be deemed to have been liquidated as of the later of the Effective Date.

On the Effective Date, the Debtor shall assign, transfer, and distribute to the Liquidation Trust all of its books and records including, without limitation, computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in the possession of third parties, wherever located. The Liquidation Trustee shall not be obligated to maintain any such books and records and may abandon such documents and data described herein without any liability or the need for notice or Court approval; however, the Liquidation Trustee shall consult with Debtor prior to the abandonment of any books and records.

Following completion of the purposes for which the Liquidation Trust is created, the Liquidation Trustee shall be authorized to request that the Court issue a final decree closing the Debtor's case.

**7.2    Retention of Equity Interests**

The holders of Equity Interests in the Debtor shall be retained and preserved under the Liquidation Plan. However, no distribution on account of such Equity Interests shall be made unless the holders of all Administrative and Class 1, 2 and 3 Claims have been paid in full.

# ARTICLE 8

## DISTRIBUTIONS UNDER THE LIQUIDATION PLAN

**8.1    Distribution Date**

Subject to the provision of Article 6 and 8, the Distribution Date shall be a date selected by the Liquidation Trustee as the time reasonably subsequent to completion and final liquidation of the Debtor's Assets and completion and final resolution of Disputed Claims, Causes of Action and Estate Litigation. At such time the Liquidation Trustee shall distribute, consistent with the terms of Article 6, and Liquidation Trust Assets to Allowed Administrative Claims and those Creditors holding Allowed Claims in Classes 2, 3 and 4 as provided for in Article 6 of this Liquidation Plan, and the Liquidation Trust.

**8.2    Disputed Reserves**

### 8.2.1 Establishment of Disputed Reserves

Notwithstanding the provisions of Article 8.1, if in the exercise of its business judgment, the Liquidation Trustee believes that complete and final resolution of certain Disputed Claims, Causes of Action or Estate Litigation will take an unreasonably long period of time, and if economically feasible, the Liquidation Trustee may elect to establish in separate accounts a Disputed Reserve for each of the unresolved Disputed Claims, each of which Disputed Reserve and related accounts shall be administered by the Liquidation Trustee. Following establishment and funding of the Disputed Reserves, the Liquidation Trustee may then declare the Distribution Date and make distributions consistent with the terms of this Liquidation Plan and the Liquidation Trust. Upon complete and final resolution of the Disputed Claims, the Liquidation Trustee shall make a subsequent Distribution from the Disputed Reserves consistent with any resolution and the terms of this Liquidation Plan and the Liquidation Trust.

### 8.2.2 Maintenance of Disputed Reserves

Each Disputed Reserve shall be closed and extinguished when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Liquidation Plan and Liquidation Trust.

**8.3    Record Date for Distributions**

The Liquidation Trustee shall have no obligation to recognize any Claim occurring or arising after the Record Date. In making any Distribution with respect to any Claim, the Liquidation Trustee shall be entitled to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim Filed with respect thereto or on the Debtor's Schedules as the holder of the Claim as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to Liquidation Trustee as of the Record Date.

**8.4    Delivery of Distributions**

### 8.4.1    General Provisions; Unclaimed Property

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Beneficiaries shall be made by the Liquidation Trustee at (i) the address of each Beneficiary as set forth in the Debtor's Schedules, unless superseded by the address set forth on Proofs of Claim filed

by such Beneficiary or (ii) the last known address of such Beneficiary if no Proof of Claim is Filed or if the Liquidation Trustee has been notified in writing of a change of address. If any Beneficiary's Distribution is returned as Unclaimed Property, no further Distributions to such Beneficiary shall be made unless and until the Liquidation Trustee is notified of such Beneficiary's then current address, at which time all missed Distributions shall be made to such Beneficiary without interest.

Amounts in respect of Unclaimed Property distributed by the Liquidation Trustee shall be returned to the Liquidation Trust until such Unclaimed Property is claimed. All claims for Unclaimed Property must be made on or before the earlier of (i) four (4) months from the date of Distribution, or (ii) four (4) years after the Effective Date, after which date the Unclaimed Property shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and shall revert to the Liquidation Trust free of any restrictions thereon, and the Claims of any Beneficiary, or successor to such Beneficiary, shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

In the event of a timely claim for Unclaimed Property, the Liquidation Trustee shall deliver the Unclaimed Property to the Beneficiary pursuant to the Liquidation Plan. Nothing contained in the Liquidation Plan, or Liquidation Trust shall require the Debtor, the Liquidation Trust, the Liquidation Trustee, or the Trust Advisory Board, or their respective Professionals, to attempt to locate any Beneficiary.

### 8.4.2 Unfeasible/Uneconomical Distribution

While all Distributions shall be made in accordance with the provisions of the Liquidation Plan, in no event shall the Liquidation Trustee be obligated to make a Distribution if, in the sole discretion of the Liquidation Trustee, there are insufficient Liquidation Trust Assets to make a cost-efficient Distribution, taking into account the size of the Distribution to be made and the number of Beneficiaries of such Distribution, in which event such funds shall, in the discretion of the Liquidation Trustee, and after consultation with the Trust Advisory Board, be donated to charity.

## 8.5    No Distributions Pending Allowance

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

## 8.6    Distributions to Holders of Disputed Claims

Upon resolution of the disputes on the Claims, holders of Disputed Claims shall receive distribution from their/its respective Disputed Reserve Account, if established. In the event the resolution of the Disputed Claim results in an amount that exceeds the respective Disputed Reserve Account, the holder of a Disputed Claim shall have no recourse, causes of action, or Claims against the Estate, the Liquidation Trust, the Liquidation Trustee, the Trust Advisory Board, or any Professional retained by the Estate, or the Liquidation Trust, the Liquidation Trustee, or the Trust Advisory Board for collection or payment of any deficiency.

# ARTICLE 9

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1     Assumption or Rejection**

Within twenty-one (21) days of the Court's preliminary approval of the Disclosure Statement, the Debtor will file a Schedule to this Plan indicating all executory contracts it proposes to assume upon confirmation. Except as provided herein, the entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of all executory contracts and unexpired leases of the Debtor that are not listed on that schedule, or that are the subject of a pending motion to assume or reject as of the date the Confirmation Order is entered.

**9.2     Rejection Claims**

If the rejection of an executory contract or unexpired lease pursuant to the Liquidation Plan and the Confirmation Order results in damages to the non-Debtor party to such contract or lease, any claim for such damages, if not heretofore evidenced by a timely Filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, the Estate, the Liquidation Trust, the Liquidation Trustee, or their properties, successors, and assigns, unless a Proof of Claim is Filed and served upon the Liquidation Trustee and his counsel, on or before thirty (30) days after the entry of the Confirmation Order.

# ARTICLE 10

## RELEASES, INJUNCTION, AND WAIVER OF CLAIMS

**10.1     Release**

With respect to any pre- and post-petition claims and causes of action, on the Effective Date, the Debtor and all persons, interested parties and Entities shall be conclusively presumed to have released the following parties: all Professionals (including the Committee and its Professionals), the Liquidation Trustee, and the Trust Advisory Board, (each of the foregoing, a "Released Party" and together, the "Released Parties"), from any Claim or Cause of Action based on, arising from, or in any way connected with, (A) the Case (including, without limitation, any actions taken and/or not taken prior to the Petition Date or with respect to the post-petition administration of the Estate or the operation of the business of the Debtor prior to and after the Petition Date); (B) the Liquidation Plan, Liquidation Trust or the Distributions received thereunder; and (C) the negotiation, formulation, and preparation of the Liquidation Plan.

Notwithstanding anything to the contrary contained in the Liquidation Plan, none of the releases provided herein shall prejudice or otherwise affect the right of any party in interest to object to (i) any applications for compensation filed by Professionals or (ii) any request seeking compensation under Section 503 of the Bankruptcy Code.

**10.2     Release of Released Parties by Holders of Claims**

On and after the Effective Date, each holder of a Claim against the Debtor shall be deemed to have released unconditionally all the Released Parties from any and all Claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement,

event or other occurrence taking place on or before the Effective Date, except to the extent necessary to enforce the provisions of the Liquidation Plan and the Liquidation Trust.

## ARTICLE 11

## RETENTION OF JURISDICTION

### 11.1    Retention of Jurisdiction

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Case, the Liquidation Plan, the Liquidation Trust, the Confirmation Order, and the Estate pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b) To decide and resolve any and all motions, adversary proceedings, objections to Claims, including Causes of Action, Estate Litigation, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c) To consider and rule on the compromise and settlement of any Claim, Disputed Claim, Cause of Action or Estate Litigation on behalf of the Debtor or its Estate, or the Liquidation Trust;

(d) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e) To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f) To hear and determine any and all applications for the allowance of compensation of Professionals for professional services rendered and expenses incurred prior to the Confirmation Date;

(g) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidation Plan and the Liquidation Trust, and all contracts, instruments, releases and other agreements or documents created in connection with the Liquidation Plan and Liquidation Trust;

(h) To consider any modifications to the Liquidation Plan, to cure any defect or omission, or reconcile any inconsistency, in the Liquidation Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Liquidation Plan and to implement and effectuate the Liquidation Plan;

(i) To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Liquidation Plan or Liquidation Trust, or any person's or Entity's obligations incurred in connection with the Liquidation Plan, or Liquidation Trust;

(j) To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(k) To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l) To enforce remedies upon any default under the Liquidation Plan, or Liquidation Trust;

(m) To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Case (whether or not the Case has been closed);

(n) To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Liquidation Plan or Liquidation Trust, or any Estate obligations incurred in connection herewith;

(o) To determine any other matters that may arise in connection with or relate to the Liquidation Plan, the Disclosure Statement, the Confirmation Order, the Liquidation Trust, the Liquidation Trustee, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Liquidation Plan, or Liquidation Trust;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Liquidation Plan or Liquidation Trust, or the enforcement of any rights, remedies, or obligations created under the Liquidation Plan, or Liquidation Trust;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) To hear any other matters if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or Title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, releases, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Liquidation Plan, or Liquidation Trust;

(t) To recover all Assets of the Debtor's Estate for the benefit of the Liquidation Trust, wherever located; and

(u) To enter a final decree closing the Case.

## 11.2    Modification of the Liquidation Plan

Any modification to the Liquidation Plan shall be consistent with the terms, conditions and requirements of Section 1127 of the Bankruptcy Code.

# ARTICLE 12

## MISCELLANEOUS PROVISIONS

**12.1    Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Liquidation Plan provides otherwise, the rights, duties, and obligations arising under the Liquidation Plan, and the instruments, agreements, and other documents executed in connection with the Liquidation Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Michigan, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

**12.2    Notices**

To be effective, all notices, requests, and demands under the Liquidation Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

The Official Committee of Unsecured Creditors:

Thomas B. Radom
c/o Butzel Long
Stoneridge West
41000 Woodward Avenue
Bloomfield Hills, MI  48304
(248) 258-1616
 Email radom@butzel.com

To the Debtor:

Lawrence Grinnell
8955 E. Pinnacle Peak Road
Scottsdale, Arizona 85255

and

Counsel for the Debtor:

BROOKS WILKINS SHARKEY & TURCO
Matthew E. Wilkins
Paula A. Hall
401 S. Old Woodward Avenue, Suite 460
Birmingham, Michigan 48009
(248) 971-1800
Email: wilkins@bwst-law.com
          hall@bwst-law.com

## 12.3 Further Documents and Actions

The Debtor, and the Liquidation Trustee shall execute, and are authorized to File with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Liquidation Plan, and Liquidation Trust, and to consummate the transactions and transfers contemplated by the Liquidation Plan. The Debtor, and the Liquidation Trustee and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Liquidation Plan, or Liquidation Trust in order to implement the terms of the Liquidation Plan or to effectuate the Distributions under the Liquidation Trust, provided that such documents and instruments are reasonably acceptable to such party or parties.

## 12.4 Relationship Between the Liquidation Plan and Disclosure Statement

To the extent that the Liquidation Plan is inconsistent with the Disclosure Statement, the provisions of the Liquidation Plan shall control.

## 12.5 Reservation of Rights

If the Liquidation Plan is not confirmed by a Final Order, or if the Liquidation Plan is confirmed and does not become effective, the rights of all parties in interest in the Case, including the Debtor, are and will be reserved in full. Any concessions or settlements reflected herein (if any), are made for purposes of the Liquidation Plan only, and if the Liquidation Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

## 12.6 Post confirmation Date Fees and Expenses

After the Confirmation Date, the Liquidation Trustee shall, in the ordinary course of business and without the necessity for any approval by the Court, pay (in accordance with the provisions set forth in Article 7, herein) the reasonable fees and expenses incurred by him and any Professional retained by the Liquidation Trust, Trust Advisory Board or the Committee from the Liquidation Trust Assets in connection with services performed for the administration of the Estate, implementation and consummation of the Liquidation Plan and Liquidation Trust, the liquidation of the Debtor's Assets, Causes of Action, Estate Litigation, the Claims objection/reconciliation process and any other matters as to which the Liquidation Trustee, Trust Advisory Board, the Committee and retained Professionals may be engaged. The fees and expenses of Professionals shall be paid within ten (10) days after submission of a detailed invoice therefore submitted to the Liquidation Trustee subject to the availability of Liquidation Trust Assets, less reserves established by the Liquidation Trustee, in its sole discretion for its on-going administration of the Liquidation Trust. If the Liquidation Trustee disputes the reasonableness of any such invoice and the parties cannot amicably resolve the dispute, the Liquidation Trustee shall timely pay (subject to the limitations described in this section 12.6) the undisputed portion of such invoice, or the Professional may pay to its general bank account from the amounts placed in escrow, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

## 12.7 Binding Effect

The rights, benefits, and obligations of any person or Entity named or referred to in the Liquidation Plan, or Liquidation Trust, or whose actions may be required to effectuate the terms of the Liquidation Plan, or Liquidation Trust, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such person or Entity, including but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code. The Confirmation Order shall provide that the terms

and provisions of the Liquidation Plan and Liquidation Trust and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Liquidation Plan and Liquidation Trust shall continue to be effective in this or any superseding case under the Bankruptcy Code.

## 12.8 Dissolution of Committee

On the Effective Date, the Committee shall dissolve and its members shall be released and discharged from all duties and obligations arising from or related to the Case. Any Professionals retained by the Committee and the members of the Committee shall not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date, except as may be necessary to File final requests for payment, and respond to any inquiries or objections and attend hearings on final fee applications.

[Space intentionally left blank]

## II.  DISCLOSURE STATEMENT

The purpose of the Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable, of the nature and history of the Debtor, to the creditors of the Debtor, so that creditors can make an informed judgment about the Plan of Liquidation. **THE PLAN OF LIQUIDATION SHOULD BE CAREFULLY READ IN CONJUNCTION WITH THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE ESTATE OF THE DEBTOR, THE AMOUNTS TO BE PAID TO CREDITORS, OR ANY OTHER MATTER, ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCIES BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN OF LIQUIDATION, THE TERMS OF THE PLAN OF LIQUIDATION SHALL CONTROL.**

*ANY CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE MEANING ASCRIBED TO THEM IN THE PLAN OF LIQUIDATION UNLESS OTHERWISE DEFINED IN THIS DISCLOSURE STATEMENT.*

### BACKGROUND OF THE DEBTOR

### A.  Description and History of Debtor.

The Debtor filed its voluntary Chapter 11 bankruptcy proceeding on April 20, 2010. The bankruptcy was filed in order to facilitate the orderly liquidation of the Debtor's business and the Debtor's various investment interests.

The Debtor is a 3-member limited liability company, organized in the State of Michigan in 1996, for the purposes of investing in and, in certain cases, managing various real property development projects that are primarily located in the Arizona. As of the Petition Date, the Debtor held a membership interest in 8 entities, each of which owns and manages a different real estate development project: (i) Double G Zuni Medical Plaza, LLC; (ii) Double G West Acres, LLC; (iii) Double G Val Vista Melrose L.L.C.; (iv) Double G Hotel at Gilbert Mercy, LLC; (v) Double G Hotel at Arrowhead Orchards, LLC; (vi) Double G Shea Medical Plaza, LP; (vii) Double G Desert Village, LP; and, (viii) Double G Arrowhead Orchards, LP (collectively, the "Double G Projects").

In most of the Double G projects the Debtor is one of many investors. The Debtor's creditors primarily include parties who loaned money to the Debtor to use in the acquisition and development of the Double G Projects. During the prepetition period, many of these ventures generated significant income to the respective entities and, by extension, to the Debtor.

Unfortunately, the Double G Projects were very negatively impacted by the precipitous and unprecedented nationwide financial crisis beginning in 2008, which crisis has resulted in a significant decline in the real estate markets, particularly including the Phoenix/Scottsdale area.

Cash flow from existing projects had been projected to not only satisfy the Debtor's ongoing financial obligations, but also to provide a healthy return to the investors in its projects. However, as the Phoenix/Scottsdale real estate market continued to languish, Double G became unable to service its debt obligations and some of its creditors commenced lawsuits against the Debtor. In order to maintain the continuity of its business operations and to have an opportunity to develop a plan for the equitable treatment of similarly situated creditors, Double G filed this bankruptcy case.

23

It has been the Debtor's consistent objective to move quickly through the bankruptcy process and to develop a plan of liquidation that is mutually beneficial to all parties.

**B.    Principals and Management.**

1.    The Debtors management has been the same since its inception, including throughout the duration of these proceedings. The Debtor is a Michigan limited liability company with three members: Peter Graves, Lawrence Grinnell, and Timothy McKay. Mr. Graves is the Debtor's President and a Managing Member. Mr. Grinnell is also a Managing Member. Corporate governance has been provided by these three individuals.

2.    None of the Members of the Debtor have received compensation from the Debtor.

## III. EVENTS OF SIGNIFICANCE DURING THE CHAPTER 11

**A.    No Unauthorized Post-Petition Transfers.**

The Debtor has not made any post-petition transfers outside of the ordinary course of business. All post-petition transfers are being shown in the monthly operating reports filed by the Debtor. The Debtor is very illiquid – it has relatively little cash flow. The value of its assets are its ownership interests in various entities.

**B.    No Cash Collateral, Financing or Adequate Protection Orders.**

The Debtor has not entered into post-petition financing, cash collateral or adequate protection orders. The only "secured" obligation of the Debtor is a mechanics lien claim by a finance company lodged against the Debtor, which the Debtor disputes. The Debtor's pre-petition funding was provided primarily by individual, unsecured lenders.

**C.    Post-Petition Litigation.**

The only post-petition litigation as of this writing is a motion filed July 2, 2010 by the United States Bankruptcy Trustee requesting the appointment of a Chapter 11 Trustee or an examiner in this case.

The Debtor does not believe that the appointment of a Trustee or Examiner is warranted in this case and is not in the best interests of the Debtor's creditors. The Debtor is opposing such motion.

**D.    Schedules of Assets and Liabilities and Statement of Financial Affairs; Operating Reports**.

With the assistance of its financial advisors, the Debtor compiled and timely submitted its schedules of all assets and liabilities and a detailed statement of its financial affairs. The Debtor has timely filed its Monthly Operating Reports.

**E.**     **Administrative Matters.**

The Debtor conducted its initial, informational meeting with the United States Bankruptcy Trustee (the "UST"). At the UST's request, the Debtor also answered questions at an informal meeting of the Debtor's creditors.

The Debtor appeared for the scheduled Section 341 meeting of its creditors. The Debtor also appeared at the Initial Status Conference before this Court.

**F.**     **Reorganization Efforts; Plan of Liquidation.**

The Debtor's intention at the outset of this case was to review the financial needs and prospects for each of the entities in which it owned a significant interest and to then determine whether exit financing was available from either third-parties or existing investors. In consultation with, and at the request of, representatives of the Committee in this case, the Debtor has elected to file this Plan of Liquidation which will transfer all of the Debtor's interests and claims to a Liquidation Trustee selected by the Committee. The Liquidation Trustee will be charged with managing the Debtor's various interests to maximize the return to the Debtor's creditors. The current members of Double G will no longer have a management role.

**G.**     **Work With Committee.**

The Debtor has consulted and communicated with the Committee representative on an ongoing basis. As indicated above, the Debtor has agreed with the Committee to file this Plan of Liquidation.

**H.**     **Preservation of Investment in Arrowhead Orchards.**

The Debtor has a significant investment in a limited partnership named "Double G Arrowhead Orchards" ("AHO"). AHO owns a multi-building medical office complex in Phoenix, Arizona. At or around the Petition Date, AHO defaulted on its mortgage indebtedness. Double G initially worked with another AHO partner who expressed an interest in curing the defaults, but wanted Double G to convey its ownership interests in AHO in return. Double G unsuccessfully attempted to negotiate the sale of its interests to the other investor.

Thereafter, Double G and the other limited partner spent considerable time working with potential purchasers of the AHO project. Although a buyer was secured who was willing to purchase the project for an amount sufficient to provide a significant return to equity investors, AHO's lender grew impatient with the pace of negotiations and scheduled a foreclosure sale of the property. Prior to the foreclosure sale, AHO commenced its own Chapter 11 case in Phoenix for the purpose of facilitating an orderly sale of the AHO project.

**I.**     **Sale of One Acre Parcel in Glendale, Arizona.**

The Debtor owns outright two parcels of land, each of which is approximately one acre. After this case was filed, the Debtor determined to raise funds to support its reorganization efforts by trying to sell these parcels. The Debtor has received an offer to purchase the one-acre Glendale parcel for $200,000, less commissions. There has been little interest in the other parcel. The Debtor estimates this parcel as having a value of between $250,000 and $400,000.

**J.**     **Preparation of Liquidation Plan and Disclosure Statement.**

As indicated above, the Debtor has devoted significant resources to the development and drafting of a Plan of Liquidation and Disclosure Statement which provides for the management of the Debtor's interests by a Liquidation Trustee selected by the Committee.

## IV. SUMMARY OF DEBTOR'S LIABILITIES TO CREDITORS

**A.**     **Liabilities.**

<u>As scheduled or as estimated.</u>

| | |
|---|---|
| Administrative Expense Claims: | $ est. $75,000-100,000 (professional fees & costs) |
| Secured Claims: | $9747.00 (Mechanics lien; disputed by debtor) |
| Unsecured Priority Claims: | $6328.38 (real property taxes due relating to vacant land parcels) |
| General Unsecured Claims: | $10,400,092.30 (principal balance) |

**B.**     **Liquidation Analysis**

| | **Property or Ownership Interest** | **Market/Forced Sale Value** | **(S) Claim** | **Equity** |
|---|---|---|---|---|
| 1. | 1-acre parcel in Glendale, Arizona | $200-350,000/$150,000 | -0- | $150,000-350,000 |
| 2. | Parcel of land referred to as "Track A" in Gilbert, Arizona | $300-400,000/$250,000 | -0- | $250,000-400,000 |
| 3. | Double G Shea Medical Plaza, Scottsdale, Arizona (Debtor owns a .5% Class A membership interest and a 30% Class B membership interest.) | Unknown/unknown (Debtor is due a membership distribution of $30,000; project had net profit in 2009 of approximately $500,000) | | Unknown (The Debtor receives a $3,000/mo. Management fee for managing this project). |
| 4. | Double G Hotel at Arrowhead Orchards, LLC, Scottsdale, Arizona (Debtor owns a 100% membership interest in this right to have a franchise for Homewood Suites Hotels. No owner or construction at present.) | Unknown/unknown | | Unknown |
| 5. | Double G West Acres, LLC, Scottsdale, Arizona (Debtor owns 19.8% Class A membership interest and 20% Class | Unknown/unknown. Market value of entire project is approximately $4.0 million; mortgage balance is | | Unknown |

26

| | | | |
|---|---|---|---|
| | B membership interest.) | approximately $2.0 million | |
| 6. | Double G Hotel at Gilbert Mercy, L.L.C., Scottsdale, Arizona. (Debtor owns a 40% Class B membership in this right to have franchise for Embassy Suites/Hilton Hotels. No owner or construction at present.) | Unknown/unknown | Unknown |
| 7. | Double G Val Vista Melrose, LLC, Scottsdale, Arizona. (Debtor owns a 15% Class A membership interest and a 40% Class B membership interest.) | Unknown/unknown (Debtor also has a receivable from this entity in the amount of $750,000) | Unknown Last appraised 12/08 ($9.1 million); mortgage balances of approximately $4.1 million; additional unsecured liabilities. |
| 8. | Double G Zuni Medical Plaza, LLC, Scottsdale, Arizona. (Debtor owns 100% of the membership interests.) | Unknown/unknown | Unknown |
| 9. | Double G Arrowhead Orchards, L.P., Scottsdale, Arizona. (Debtor owns a 2.25% Class A partnership interest and a 28% Class B partnership interest.) | Unknown/unknown (the Debtor's total capital account balance is $632,050.) | Unknown (Project is currently in Ch. 11 in Phoenix, Az.) Value will depend on sale price. |
| 10. | Double G Desert Village, L.P., Scottsdale, Arizona. (Debtor owned 1.03% Class A partnership interest and 38.44% Class B partnership interest.) | Zero: property was sold at foreclosure sale; deficiency balance. | Zero. |
| 11. | Refundable retainer due from Kennedy Funding, Hackensack, NJ | $10,000/$10,000 | $10,000 |
| 12. | Claims/Litigation | The Debtor is unaware at this time of any litigation claims or causes of action. | |

## Risks, Conditions, and Assumptions Regarding the Value of the Debtor's Assets.

1&2.   It is difficult, if not impossible, to accurately estimate the value of the Debtor's equity in these two parcels of vacant land. The market in the Phoenix/Scottsdale area, particularly for undeveloped land, is extremely soft. The Debtor has a prospective purchaser for the Glendale parcel for $200,000 cash, less commissions and customary closing costs. Despite having been marketed for months, there have been no other offers on this property. "Track A" in Gilbert has seen little or any interest. The recoveries on these properties will ultimately be determined by when they are sold, recognizing that the Liquidation Trustee

27

may need to sell these promptly to generate funds with which to manage the liquidation and the Debtor's interests in other Double G projects.

3. Shea Medical Plaza generates positive cash flow, periodic disbursements to its investors, and a $3,000 per month management fee to the Debtor.

4&6. The Debtor places little or no present value on these two hotel franchise agreements.

5. The Debtor owns approximately 40% of the membership interests of Double G West Acres, LLC. The Debtor estimates the approximate market value of this project at $4.0 million, with a mortgage balance of approximately $2.0 million. If sold and these numbers obtained, the Debtor would receive a distribution of approximately $800,000.

7. The Debtor owns approximately 55% of the membership interests in Double G Val Vista Melrose, LLC. The Debtor estimates the fair market value of this project at $7.8 million, with mortgage balances of approximately $4.1 million. The potential value to the Debtor is unknown at this time.

8. The Debtor owns 100% of the membership interests of Double G Zuni Medical Plaza. It is an 8,000 square foot medical office building that is approximately 42% vacant. At this occupancy level, it operates at a break-even cash level. It is subject to a mortgage in the approximate amount of $1,100,000. The Debtor believes the best use of this project is to attempt to increase occupancy and to hold it until the market recovers.

9. The Debtor may or may not receive any distribution on its interest in Double G Arrowhead Orchards, L.P. This entity is in its own bankruptcy proceeding and the project will be sold pursuant to a Section 363 sale. The approximate mortgage balance is $19.0 million and general unsecured and contractor lien claims are estimated at $800,000. The Debtor estimates the project would need to be sold for at least $21.0 million before the Debtor would receive anything on its investment.

The Debtor believes it is preferable to Debtor's creditors to have Debtor's estate liquidated pursuant to this Plan of Liquidation. If Debtor's case were converted to a Chapter 7 liquidation, the estate would incur chapter 7 administrative expenses that will further diminish any distribution to all creditors. Furthermore, the Debtor believes the Liquidation Trustee will be better able and more efficient in management of the Debtor's assets, and the Estate will avoid the statutory fee of a Chapter 7 trustee, allowing the Liquidation Trust to maximize the value of the assets available for distribution. The Debtor therefore believes that acceptance of the Plan of Liquidation is in the best interests of the Estate, as it will allow for the greatest possible recovery.

## V. IMPLEMENTATION OF THE PLAN OF LIQUIDATION

Because the Debtor will not be operating its business as a part of the implementation of its Plan of Liquidation, no historical financial information is being provided as part of this Disclosure Statement, nor are any financial projections being provided for any period. Similarly, no information is being provided with respect to who will be in charge of such business and the compensation to be received by them, including fringe benefits; provided, however, that it is contemplated that the Liquidation Trustee, and other parties, will retain legal counsel and other professionals to represent, consult and assist in the administration of the Liquidation Trust.

The Debtor will not be continuing in its current business subsequent to the Confirmation Date, therefore there will be no tax ramifications for the Debtor as a continuing entity. As a result of implementation of the Plan of Liquidation, it is likely that the Debtor's outstanding indebtedness will not be paid in full,

however, the remaining indebtedness will not be cancelled or discharged. In general, the Internal Revenue Code, with certain exceptions, provides that a taxpayer who realizes a "discharge of indebtedness" must include the amount of discharged indebtedness in gross income to the extent that the indebtedness discharged exceeds any consideration given for such discharge. Because the Plan of Liquidation does not grant Debtor a discharge pursuant to Section 1141(d)(3) of the Bankruptcy Code, this does not apply to Debtor.

## LEGAL REQUIREMENTS

### A. Voting Procedures

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are <u>not</u> entitled to vote on the Plan of Liquidation.

Creditors that hold claims in more than on impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the Plan of Liquidation will be counted only with respect to claims: (a) that are listed on the Debtor's Schedules of Assets and Liabilities <u>other</u> than as disputed, `contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from the bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rule 3018.

Voting on the Plan of Liquidation by each holder of a claim or interest in an impaired class is important. After carefully reviewing the Plan of Liquidation and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the Plan of Liquidation, and then return the ballot by mail to the debtor's attorney by the deadline established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the Plan of Liquidation will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost or missing, a replacement ballot may be obtained by sending a written request to the Debtor's attorney.

### B. Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has accepted the plan.

**C.      Confirmation**

Section 1129(a) of the Bankruptcy Code establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the chapter 11 process.

Among several conditions for confirmation of a plan under Section 1129(a) of the Bankruptcy Code are these:

1.      Each class of impaired creditors and interests must accept the plan, as described in paragraph III.B., above.

2.      Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under chapter 7 of the Bankruptcy Code.

**D.      Modification**

The Debtor reserves the right to modify or withdraw the Plan of Liquidation at any time before confirmation.

**E.      Effect of Confirmation**

If the Plan of Liquidation is confirmed by the Court:

1.      Its terms are binding on the Debtor, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the Plan of Liquidation.

2.      Except as provided in the Plan of Liquidation:

     a.      In the case of a corporation that is reorganizing and continuing business:

       (1) All claims and interests will be discharged.
       (2) Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

     b.      In the case of a corporation that is liquidating and not continuing its business:

       (1) Claims and interests will not be discharged.
       (2) Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

     c.      In the case of an individual or husband and wife:

       (1) Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 727(a).
       (2) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 727(a).

30

In this Case, paragraph 2(b) applies with respect to the treatment of Debtor in this Combined Plan of Liquidation and Disclosure Statement.

WHEREFORE, the Debtor, Double G Ranch, LLC respectfully submits this Combined Plan of Liquidation and Disclosure Statement.

<div style="margin-left: 40%;">

Respectfully submitted,

**DOUBLE G RANCH, LLC**

/s/ Lawrence Grinnell
Lawrence Grinnell
Managing Member

and


**BROOKS WILKINS SHARKEY & TURCO, PLLC**

/s/ Paula A. Hall
Matthew E. Wilkins (P56697)
Paula A. Hall (P61101)
Counsel for Debtor
401 S. Old Woodward Avenue, Suite 460
Birmingham, MI 48009
T: (248) 971-1800
F: (248) 971-1801
Email: wilkins@bwst-law.com
       hall@bwst-law.com

</div>

Dated: July 16, 2010

# ADDENDUM A

# LIQUIDATION TRUST AGREEMENT

## 1.    Formation of the Liquidation Trust

Effective as of the Effective Date, the Liquidation Trust is established for the limited purpose of: (i) administering the Liquidation Trust Assets, (ii) analyzing, and if in the sole discretion of the Liquidation Trustee, prosecuting and/or liquidating Causes of Action, Estate Litigation and other Estate Claims, (iii) resolving all Disputed Claims as of the Effective Date, and (iv) making all Distributions provided for under the Liquidation Plan. The Liquidation Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d). The Liquidation Trust shall be governed under the laws of the State of Michigan.

## 2.    The Liquidation Trustee

The Liquidation Trustee shall be designated by the Committee. A party is not precluded from serving as the Liquidation Trustee merely as a consequence of having a prior relationship with the Debtor or by serving as a professional retained by the Debtor or the Committee in the Chapter 11 Case. The person so designated shall become the Liquidation Trustee on the Effective Date. The Liquidation Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Liquidation Trust Agreement. The Liquidation Trustee may be removed by the Court for cause shown or pursuant to the terms of the Liquidation Trust Agreement.

## 3.    Funding of the Liquidation Trust

As of the Effective Date, the Debtor shall transfer and convey all right, title, and interest in the Liquidation Trust Assets to the Liquidation Trust, and all Liquidation Trust Assets shall automatically and irrevocably vest in the Liquidation Trust without further action on the part of the Debtor, the Liquidation Trustee or the Court, and with no reversionary interest in the Debtor except as otherwise provided in the Liquidation Plan.

The Liquidation Trust Assets shall include the following: (i) all of the Causes of Action and Estate Litigation; (ii) the Liquidation Trust Proceeds; and (iii) all other tangible or intangible Assets of the Estate.

The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be made for the benefit and on behalf of all holders of Allowed Claims entitled to receive distributions from the Liquidation Trust under the Liquidation Plan. Upon the transfer of the Liquidation Trust Assets, the Liquidation Trust shall succeed to all of the Debtor's rights, title, and interest in the Liquidation Trust Assets, and the Debtor will have any further interest in or with respect to the Liquidation Trust Assets.

Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtor and the Estate shall have no other or further rights or obligations with respect to the Liquidation Trust except as specifically set forth in the Liquidation Plan; provided, however, that the Debtor will make reasonable efforts to cooperate with the Liquidation Trustee in achieving and effectuating the intent and purpose of the Liquidation Trust.

## 4.    The Trust Advisory Board

An advisory board (the "Trust Advisory Board") shall be created for the Liquidation Trust and shall be comprised of at least three (3) members, each of whom shall be designated by the Committee Members of the Trust Advisory Board may have been a member of the Committee.

The Trust Advisory Board shall adopt such bylaws as it may deem appropriate. The Liquidation Trustee shall consult regularly with the Trust Advisory Board when carrying out the purpose and intent of the Liquidation Trust. In the event of the resignation or removal of the Liquidation Trustee, the Trust Advisory Board shall designate a person to serve as successor Liquidation Trustee.

The members of the Trust Advisory Board shall be entitled to reimbursement of the reasonable and necessary expenses incurred by them in carrying out the purpose of the Liquidation Trust in accordance with the Liquidation Trust Agreement. Such reimbursement shall be payable solely from the Liquidation Trust.

Upon the certification by the Liquidation Trustee that the Liquidation Trust Assets have been liquidated, distributed, abandoned, or otherwise disposed of, the members of the Trust Advisory Board shall resign their positions, whereupon they shall be discharged from further duties and responsibilities.

## 5.    Responsibilities of Liquidation Trustee

The Liquidation Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Liquidation Plan and the Liquidation Trust and will have those responsibilities created by this Liquidation Plan and the Liquidation Trust upon the terms and conditions summarized therein, and will, for the benefit of the holders of Allowed Claims, exercise the rights and powers vested in it by this Liquidation Plan and the Liquidation Trust in the same manner, and use the same degree of care and skill in their exercise as a prudent person would exercise and use under the circumstances in the conduct of its/his own affairs, and further agrees to receive and disburse all of the Liquidation Trust Assets in accordance with the terms thereof and this Liquidation Plan. More specifically, the Liquidation Trustee shall have the right, power, authority, standing and approval and shall be empowered to:

(a) perform all of the obligations and agreements of the Liquidation Plan and the Liquidation Trust provided for herein;

(b) keep and maintain in a trust account for the benefit of the Liquidation Trust into which proceeds resulting from the initial receipt or from the sale or other disposition of, or from the income resulting from, all or any part of the liquidation of Debtors' Assets and/or the prosecution of Causes of Action or Estate Litigation;

(c) keep and maintain trust accounts for the benefit of the Liquidation Trust into which accounts the Trustee may place the Disputed Reserves;

(d) commence, continue, prosecute, litigate and/or settle and compromise Causes of Action and Estate Litigation on behalf of the Liquidation Trust and for the benefit of the Beneficiaries thereof;

(e) object to any Claims (disputed or otherwise), and to compromise or settle any Claims prior to, during or after objection and/or to seek Court approval for any settlements of Claims;

2

(f) make distributions in respect of Allowed Claims and all other Claims that become Allowed Claims subsequent to the Effective Date in accordance with the Liquidation Plan;

(g) collect, receive and give receipt for all sums of money or other property due to the Debtor, its Estate or the Liquidation Trust, or take any other actions necessary to the collection, receipt or disposition of any Assets of the Estate;

(h) compromise or settle disputes with respect to disputes or debt obligations owed to the Debtor, the Estate or the Liquidation Trust;

(i) execute and deliver all releases, satisfactions and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

(j) retain and/or terminate professional persons, in its discretion, to assist in the duties and responsibilities ascribed to him under this Liquidation Plan and the Liquidation Trust. The reasonable fees and expenses of all professionals retained by the Liquidation Trustee shall be paid from the Liquidation Trust Proceeds obtained from the liquidation and/or prosecution of the Causes of Action and Estate Litigation. Professionals of the Liquidation Trustee may reserve in their client trust accounts amounts sufficient to pay such fees and expenses from the Liquidation Trust Proceeds;

(k) satisfy all reporting requirements for the Liquidation Trust, and all assets held by or on behalf of the Liquidation Trust, to the relevant reporting authority;

(l) file with the Bankruptcy Court, as necessary, semi-annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it, and other matters required to be included in such report; and

(m) except as otherwise ordered by the Court, and subject to the terms of the Liquidation Plan, pay any fees and expenses incurred by the Liquidation Trust on or after the Effective Date in accordance with the Liquidation Trust Agreement.

Subject to the other terms of the Liquidation Plan and the Liquidation Trust, the Liquidation Trustee shall also have the right, power, authority, standing and approval to commence, continue, prosecute, litigate and/or settle and compromise Causes of Action and any other Estate Litigation or Claim against third parties. The Liquidation Trustee shall also have the right, standing and approval to object to the allowance of any Claim.

The Liquidation Trustee may, in his sole discretion, and without order of the Court, allow the Trust Advisory Board to commence, continue, prosecute, litigate and/or settle and compromise any Causes of Action and any other Estate Litigation or Claim against third parties on behalf of the Liquidation Trust and Trust Advisory Board shall have the right, power, authority, standing and approval to commence such Causes of Action and any other Estate Litigation or Claim upon the request of the Liquidation Trustee.

6.    **Claims Against Liquidation Trust**

All persons having any claim against the Liquidation Trust or its Professionals (which for purposes of this Article 6, the term "Professionals" shall also include the Trust Advisory Board and the Professionals employed by the Trust Advisory Board) in connection with its performance of its rights,

3

powers and duties as such shall only look to the Liquidation Trust and the Liquidating Trust Assets for payment or satisfaction thereof.

## 7. Commingling of Assets and Liquidation Trust Proceeds

The Liquidation Trustee shall not commingle any of the Liquidation Trust Assets with its own property or the property of any other person.

## 8. Reliance on Others

The Liquidation Trustee may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments or reports believed by it to be genuine and to have been signed or presented by the proper person or persons, provided, however, that the Liquidation Trustee shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Liquidation Plan.

## 9. Liability for Errors and Omissions

The Liquidation Trust, Liquidation Trustee, the Trust Advisory Board and all Professionals, and agents of same, shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken by it, unless it shall be proved that they or their agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of their rights, powers or duties according to this Liquidation Plan and the Liquidation Trust. In the event gross negligence and willful misconduct is proven, the Beneficiaries shall be entitled to reimbursement of their reasonable costs, including attorney's fees. Neither the Liquidation Trustee nor the Trust Advisory Board make any representations as to: (i) the value or condition of the Assets of the Debtor or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Causes of Action or Estate Litigation (iii) the amount at which Liabilities may be settled, (iv) the amount of any Distributions to be made in accordance with this Liquidation Plan from the Liquidation Trust Assets and (v) the security afforded by this Liquidation Plan, or as to the validity, execution (except its own execution), enforceability, legality or sufficiency of this Liquidation Plan, and the Liquidation Trustee, the Trust Advisory Board and all Professionals shall incur no liability or responsibility in respect of such matters.

## 10. Indemnification

The Liquidation Trustee, Trust Advisory Board, their Professionals and agents shall be indemnified by and receive reimbursement from the Liquidation Trust Assets (whether or not distributed to the Beneficiaries) against and from any and all loss, liability, cost, damage or expense which it may incur or sustain in the exercise and performance of any of its powers and duties pursuant to this Liquidation Plan and Liquidation Trust unless such loss, liability, cost, damage or expense shall be incurred or sustained as a result of the gross negligence or willful misconduct of the Liquidation Trustee, Trust Advisory Board, or their Professionals and agents. All claims of the Liquidation Trustee, Trust Advisory Board, their Professionals or agents for indemnification or reimbursement under this Article 10 shall be offset against any portion of the Assets of the Debtor including, but not limited to, the Liquidation Trust Proceeds or, at Liquidation Trustee's discretion, against any payment or distribution made or to be made in accordance with the Liquidation Plan; provided, however, that payment of all outstanding chapter 11 pre-confirmation Allowed Administrative Claims are first paid in full.

4

## 11. Tax Treatment of the Liquidation Trust

The Liquidation Trustee may pay taxes from the Liquidation Trust Assets as appropriate. In addition, the Liquidation Trust shall require consistent valuation of the property contributed to the Liquidation Trust by the Liquidation Trustee for all federal income tax purposes. The Liquidation Trust is intended to be treated for federal income tax purposes as a liquidating trust for the benefit of creditors or claimants within the meaning of Treasury Regulations section 301.7701-4(d) and in accordance with IRS Revenue Procedure 94-45, and, as a grantor trust under Section 677 of the Internal Revenue Code of 1986, as amended. Accordingly, the Liquidation Trust Assets in respect of holders of Allowed Claims shall be treated for all purposes of the Internal Revenue Code as (i) a transfer of such distribution to such creditors who are the Beneficiaries of the Liquidation Trust; and (ii) a transfer to the Liquidation Trust by the Beneficiaries, who will be treated as the grantors and deemed owners of the Liquidation Trust Assets. The Liquidation Trustee shall be responsible for filing all federal, state, and local tax returns for the Liquidation Trust as a grantor trust pursuant to applicable Treasury Regulations, including Treasury Regulation Section 1.671-4(a), and any income of the Liquidation Trust will be treated as subject to tax on a current basis. Subject to the receipt of any definitive guidance of the IRS or the Bankruptcy Court, any claims reserve is intended to qualify and be treated as a disputed ownership fund pursuant to Proposed Treasury Regulation Section 1.468B-9. As such, any disputed claims reserve shall report and pay any taxes on its income, the Liquidation Trustee shall act as the "administrator" of the disputed ownership fund, and the disputed claims reserve shall be subject to the continuing jurisdiction of the Bankruptcy Court. Currently, no money or other property shall be distributed to any Person holding a disputed claim except to the extent that such disputed claim becomes an Allowed Claim pursuant to the Plan.

## 12. Reports to be Filed by the Liquidation Trust

The Liquidation Trust may, but is not required to, file with the Court semi-annual reports regarding the liquidation or other administration of property comprising the Liquidation Trust Assets, the distributions made by it, and other matters required to be included in such report in accordance with the Liquidation Trust Agreement.

## 13. Investment Authority

The Liquidating Trustee shall have investment powers which are limited to those powers reasonably necessary to maintain the value of the Liquidating Trust assets and to further the liquidating purpose of the trust as further described in IRS Revenue Procedure 94-45. The Liquidating Trustee may only invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury Bills as specified in Revenue Procedure 94-45. Income earned on investments shall be deemed a part of the Liquidation Trust Assets.

## 14. Exemption From Certain Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from the Debtor or the Liquidation Trust to any Entity pursuant to the Liquidation Plan in the United States shall not be taxed under any law imposing a stamp tax or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Liquidation Plan.

5

## 15. Termination

Termination of the Liquidation Trust shall occur no later than five (5) years after the Effective Date, unless the Bankruptcy Court shall approve an extension based upon a finding that such an extension is necessary for the Liquidation Trust to complete its purpose.

## 16. Privileges

To the full extent permitted by law, the Debtor shall irrevocably transfer to the Liquidation Trustee, as its legal successor, all rights of the Debtor and its Estate to exercise or waive any privilege, including the attorney-client privilege, accountant-client privilege, work-product privilege or other privilege or immunity attaching to any document or communication (whether written or oral) (collectively, the "Privileges"), and the Debtor and the Liquidation Trustee are authorized to take all necessary actions to effectuate the transfer of the Privileges. All such Privileges also shall vest in the Liquidation Trust and its representatives, to the full extent permitted under law. This transfer is self-executing as of the Effective Date, provided however, that the Liquidation Trustee and the Debtor are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges. After the Effective Date, the Liquidation Trustee shall have the power and authority to assert or waive the Privileges.

6